John Burton, State Bar No. 86029
jb@johnburtonlaw.com
Matt Sahak, State Bar No. 310624
ms@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 449-8300

Attorneys for Plaintiff Eva Carrillo, Individually
And as the Personal Representative of Raul Antonio Barreto, Deceased,

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA CARRILLO, individually and as the personal representative of RAUL ANTONIO BARRETO, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, DEPUTY GOMEZ (No. 655591), DEPUTY CAMPOS (No. 616223) and DOES 1 to 10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR WRONGFUL DEATH AND DAMAGES:**<br><br>1. 42 U.S.C. § 1983, Wrongful Death and Loss of Familial Relationships;<br>2. 42 U.S.C. § 1983, Survival;<br>3. ADA and Rehabilitation Act<br>4. Cal. Civil Code § 52.1 - Bane Act<br>5. Negligence<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. Plaintiff alleges claims under 42 U.S.C. § 1983, the ADA, and California state law. Accordingly, 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) provide for subject matter jurisdiction. Plaintiff's state-law claims form part of the same case and controversy, and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

2. Plaintiff's claims arise out of a course of conduct at Los Angeles County Men's Central Jail (MCJ) involving officials of Los Angeles County. Therefore venue lies within this judicial district and division.

## PARTIES

3. Decedent Raul Antonio Barreto is the son of Plaintiff Eva Carrillo.

4. Plaintiff Eva Carrillo is an adult competent to brings these claims both individually and as the successor-in-interest for Decedent pursuant to Cal. Civ. Proc. Code § 377.30.

5. Defendant County of Los Angeles is a government entity, a political subdivision duly organized under the laws of the State of California not entitled to Eleventh-Amendment immunity. Defendant Los Angeles Sheriff's Department (LASD) is a government entity subject to suit. At all relevant times, Defendant LASD was a branch or agency of the County not entitled to Eleventh-Amendment immunity. As alleged above, the County and LASD are collectively referred to as "County Defendants."

6. Defendants Deputy Gomez (No. 655591) and Deputy Campos (No. 616223) are LASD deputies who were assigned to the jail.

7. Plaintiff sues defendants Does 1 to 10 by their fictitious names and will amend this complaint to allege their true identities when ascertained.

8. Each individual and Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants County and LASD, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed the appropriate administrative claims, which has been denied. This lawsuit is timely.

# FACTS

10. Decedent Raul Antonio Barreto had a troubled youth. During his final stay as a juvenile with the Los Angeles County Probation Department, however, he connected with a mentor, educated himself, and became an activist for juvenile and criminal justice reform. Mr. Barreto worked in gainful employment. Mr. Barreto traveled internationally, spoke at events, and authored papers. By all accounts, Mr. Barreto was a pleasant man, but apparently he developed emotional and mental difficulties with age that he at times self medicated with alcohol and illicit substances. Mr. Barreto's history of substance abuse, however, included long periods of abstinence and participation in recovery programs.

11. On March 5, 2020, Mr. Barreto experienced a psychotic episode while at his own apartment. He was agitated, talking to himself, and broke a window. The manager called the LAPD out of concern that he might hurt himself. The LAPD held Mr. Barreto for four days and then transferred him to the custody of the County and the LASD on March 9, 2020.

12. On information and belief, Mr. Barreto was showing clear signs of mental illness and required hospitalization, rather than housing in the general population, which posed a risk of harm, including by other inmates.

13. After going through the jail admission process, Mr. Barreto was assigned to MCJ, Module 4800, Cell No. 10, Baker Row, with three other inmates, Salgado, Santoyo and Murillo. A fourth inmate, Torres, was also in the cell. Apparently the inmates, including Mr. Barreto, were sharing methamphetamine.

14. On March 11, 2020, at about 12:30 p.m., Mr. Barreto was discovered unresponsive, beaten to a pulp and strangled in his cell. His death was pronounced by paramedics at 1:14. No one is being prosecuted for his murder.

**DAMAGES**

15. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff Eva Carrillo individually sustained the following injuries and damages, past and future, among others:

    a. Damages for the wrongful death of her son Raul Antonio Barreto;

    b. Funeral and burial expenses;

    c. Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, and all other wrongful death damages;

    d. Violation of constitutional rights;

    e. Plaintiff's pain and suffering, including emotional distress;

16. As the Decedent's successor-in-interest, Plaintiff is entitled to recover the following damages:

    a. Mr. Barreto's loss of enjoyment of life, pursuant to federal civil rights law;

    b. Mr. Barreto's pre-death pain and suffering, pursuant to federal civil rights law;

    c. Punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – WRONGFUL DEATH AND**
**LOSS OF FAMILIAL RELATIONSHIP)**
(Plaintiff Eva Carrillo Individually)

17. Defendants, acting under the color of state law in their individual and personal capacities, deprived Raul Antonio Barreto, an inmate at MCJ, of the rights, privileges, and immunities secured by the Fourth and Fourteenth Amendment to the United States Constitution by failing to protect him from violence at the hands of his cell mates and other inmates, and by subjecting him to a substantial risk of serious harm to which Defendants were both objectively and subjectively deliberately indifferent.

18. Defendants, acting under color of state law, deprived Plaintiff Eva Carrillo of her right to a familial relationship with Decedent without due process of law in violation of the Fourteenth Amendment by their conscious-shocking deliberate indifference to Decedent's security and safety, causing Decedent's death.

19. Despite knowledge of the substantial risk of severe harm inmates Salgado, Santoyo, Murillo and Torres, and other inmates, posed to Decedent, and the risks posed by allowing drug use in the jail, in part because of Mexican Mafia influence and jail deputies and workers smuggling in contraband, Defendants did not take reasonable available measures to protect Mr. Barreto, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious. Defendants knew or should have known that Raul Antonio Barreto's cell mates and other inmates posed a serious and immediate threat of death or great bodily injury to him, and they knew or should have known that he was in grave danger. Defendants further had a duty to provide Raul Antonio Barreto with reasonable security, including a transfer to safer housing where he was not in grave danger from his cell mates, and other appropriate precautions to ensure his cell mates did not murder him.

20. Defendants knew or should have known that Raul Antonio Barreto required an immediate housing transfer because Defendants knew or should have known that Raul Antonio Barreto could not protect himself from his violent and dangerous cell mates.

21. Defendants knew or should have known that Raul Antonio Barreto was experiencing mental illness and otherwise had mental and behavioral issues that required him to be segregated from other inmates, particularly violent inmates, for his own protection.

22. Defendants subjected Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiff and Decedent.

23. As a direct and proximate result of Defendants' acts and omissions as set forth above, Raul Antonio Barreto was murdered in his cell and Plaintiff sustained injuries and damages as set forth herein.

**SECOND CLAIM FOR RELIEF**

**(42 U.S.C. § 1983 – SURVIVAL ACTION**

(Plaintiff Eva Carrillo as Successor-in-Interest)

24. Plaintiff Eva Carrillo brings this claim for relief in her capacity as the successor in interest and personal representative of the Decedent, for whom there is no estate opened. Plaintiff has filed the requisite declaration pursuant to California Civil Procedure Code § 377.32.

25. The foregoing claim for relief arose in the Decedent's favor, and the Decedent would have been the plaintiff with respect to this claim for relief had he lived.

26. Defendants, acting under color of state law, deprived the Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendment to the Constitution, by, among other things, failing to protect him from violence at the hands of his cell mates and other inmates, allowing the Mexican Mafia and corrupt jail employees to smuggle methamphetamine and other contraband into the jail, and otherwise subjecting him to a substantial risk of serious harm to which defendants were both subjectively and objectively deliberately indifferent.

27. Despite actual and constructive knowledge of the substantial risk of severe harm Salgado, Santoyo, Murillo and Torres, and other inmates posed to the Decedent, Defendants did not take reasonable available measures to abate the risk of injury to Mr. Barreto, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious. Defendants knew or should have known that Raul Antonio Barreto's cell mates and other inmates posed a serious and immediate threat of death or great bodily injury to him, and they knew or should have known that he was in

grave danger. Defendants further had a duty to provide Raul Antonio Barreto with reasonable security and a drug free environment.

28. Defendants knew or should have known that Raul Antonio Barreto was experiencing mental illness and otherwise had mental and behavioral issues that required him to be segregated from other inmates, particularly violent inmates, for his own protection.

29. Defendants knew or should have known that Raul Antonio Barreto required an immediate housing transfer because Defendants knew or should have known that Raul Antonio Barreto could not protect himself from his violent and dangerous cell mates.

30. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Raul Antonio Barreto and other helpless inmates would be violated by their acts and omissions.

31. As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Decedent was choked and beaten to death, and thus sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof.

32. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

**THIRD CAUSE OF ACTION**

(Title II of the ADA, Title III of the ADA, and the Rehabilitation Act)

(Plaintiff against Defendants County and LASD)

33. Congress enacted the Americans with Disabilities Act ("ADA")finding, among other things, that discrimination against people with disabilities continues to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

34. Because of his mental and emotional disease Decedent was a "qualified individual" with an illness, disability and medical impairment that substantially limited his ability to care for himself and control his physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

35. Defendant County is a public entity under Title II of the ADA. 42 U.S.C. § 12131(1)(A). Title II of the ADA applies generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Defendants County's and LASD's jails and medical services therefore are covered under Title II of the ADA. Respondeat superior liability applies to Title II claims. Defendants County and LASD are therefore liable under Title II of the ADA for the unlawful acts of their agents and employees. Under the ADA, Defendants County and LASD are mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

36. Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals." 42 U.S.C. § 12182(b)(1)(A)(iii). Under Title III of the ADA, County is mandated not to discriminate against any qualified individual "on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

37. Defendants County and LASD receive federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794. Defendants County and LASD are within the mandate of the RA that no person with a disability may be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

38. At all material times and as described herein, the Decedent:

    (a) was an individual with a disability;

    (b) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County and LASD jail services, programs, and activities;

    (c) was excluded from participation in, and denied the benefits of the County and LASD services, programs or activities, and was otherwise discriminated against by County and LASD; and

    (d) such exclusion, denial of benefits or discrimination was by reason of his disability.

39. As described herein, Defendants County and LASD failed to reasonably accommodate the Decedent's mental and emotional disability in the course of jailing him., causing him to suffer greater injury in the process than other detainees or arrestees, culminating in his death.

40. The County's and LASD's failures to accommodate the Decedent's disability include but are not limited to:

    (a) causing the violation of the Decedent's rights through the acts and omissions identified above;

    (b) failing to follow lawful and appropriate policies, practices, and procedures for mentally ill inmates;

    (c)    failing to provide the Decedent with timely, competent and appropriate hospitalization and supervision in the jail;

    (d)    failing to house Decedent in an appropriate unit;

    (e)    failing to institute proper medical precautions for the Decedent;

    (f)    failing to respond to the medical alert system for inmates who predictably and routinely require immediate, urgent and necessary medical aid;

    (g)    failing to develop an effective, integrated, comprehensive system for the delivery of services to persons with disabilities to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected; and

    (h)    other failures to provide accommodations as the evidence in this case may show.

41.    As a direct and proximate result of County's and LASD's violations of the ADA and RA, Plaintiff and the Decedent sustained injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth herein.

## FOURTH CAUSE OF ACTION

(Cal. Civil Code § 52.1 - Bane Act)

(Plaintiff Individually and as Successor-in-Interest Against All Defendants)

42.    By their acts, omissions, customs, and policies, Defendants, acting in concert, as described above, and with threat, intimidation, and coercion, violated Plaintiff's and Decedent's rights under Cal. Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

    a.    Decedent's right to protection and to be free from unsafe conditions of confinement, as secured by the Fourth and Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Sections 17 and 24;

    b.    Plaintiff's right to be free from wrongful government interference with familial relationships and Plaintiff's right to companionship, society, and

support with the Decedent, as secured by the Fourteenth Amendment and state constitutional provisions and laws;

  c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

  d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

43. Defendants' violation of Raul Antonio Barreto's rights through their own intentional and volitional conduct, and with deliberate indifference to the rights and safety of Raul Antonio Barreto, in and of itself constitutes threat, intimidation, or coercion under the Bane Act as interpreted by courts.

44. To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiff Eva Carrillo, it is asserted by her individually and as a wrongful death claim. To the extent the violations were done to both Decedent and Plaintiff, it is asserted as an individual claim, survival and wrongful death.

45. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this Count, and is entitled to damages as set forth above, and punitive damages against all individual Defendants, but not the County or LASD, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

### FIFH CAUSE OF ACTION
(Negligence)
(Plaintiff Against All Defendants)

46. At all material times, each Defendant owed Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

- 11 -

47. At all material times, each Defendant owed Decedent the duty to act with reasonable care.

48. These general duties of reasonable care and due care owed to Decedent by Defendants include but are not limited to the following specific obligations:

   (a) To provide, or cause to be provided, safe conditions of confinement for Decedent;

   (b) To provide, or cause to be provided, protection from violence at the hands of his cell mates; and

   (c) To refrain from unreasonably creating danger or increasing Decedent's risk of harm.

49. Defendants, through their acts and omissions, breached each and every duty of care owed to Decedent.

50. As a direct and proximate result of Defendants' negligence, Plaintiff and the Decedent sustained injuries and damages as alleged above.

**PRAYER**

WHEREFORE, Plaintiff requests relief as follows, and according to proof, against each defendant:

1. General and compensatory damages in an amount according to proof;
2. Special damages in an amount according to proof;
3. Exemplary and punitive damages against each individual and Doe defendant, in an amount according to proof;
4. Statutory damages under the Fourth Cause of Action;
5. Costs of suit, including attorneys' fees; and
6. Such other relief as may be warranted or as is just and proper.

Dated: January 5, 2021          THE LAW OFFICES OF JOHN BURTON

                                By: /s/ John Burton
                                    John Burton
                                    Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury.

Dated: January 5, 2021        THE LAW OFFICES OF JOHN BURTON

By: ____/s/ John Burton____
John Burton
Attorneys for Plaintiff